REVEREND GEORGE T. STALLINGS, ET AL.

V.

CHARLES R. WALL, CHIEF OF POLICE, ETC.

Record No. 850614

April 22, 1988

Present: All the Justices

314

*Richard E. Gardiner* for appellants.

*Kevin J. Cosgrove, Assistant City Attorney (J. Dale Bimson, City Attorney; William M. Macali, Assistant City Attorney,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

The question presented in this appeal is whether the City of Virginia Beach (the City) had the authority to adopt an ordinance requiring that any person desiring to acquire a pistol or revolver from a licensed firearms dealer must first obtain a permit from the City's Chief of Police.

On January 23, 1984, the Council of the City adopted an ordinance that amended and reordained Section 38-6 of the City's code to provide, in pertinent part, as follows:

(a) No licensed importer, licensed manufacturer or licensed dealer shall sell, lease, rent, give or otherwise furnish to any person within the city any pistol, revolver or similar type of handgun unless a permit granted by the chief of police, or such other officer of the police department as may be designated in writing by the chief of police, is presented authorizing the holder of such permit to acquire such weapon.

. . . .

(b) No permit required by (a) above shall be issued to:
1. Any person under the age of 21 years;
2. Any convicted felon;
3. Any person under indictment or information for a felony;

4. Any person who at the time of application is charged with a crime involving violence;

5. Any person who has been found not guilty of a felony on the basis of insanity;

6. Any person who is a fugitive from justice;

7. Any person who presently is an unlawful user of, or addicted to, marijuana, a depressant, stimulant or narcotic drug; and

8. Any person who has been committed to a mental institution.

. . . .

(d) A violation of this section shall constitute a Class 1 misdemeanor.

The Reverend George T. Stallings and three other residents of the City[1] (collectively, Stallings) filed suit against the City's Chief of Police, seeking a declaratory judgment that the City was without authority to adopt the ordinance. After both parties requested summary judgment, the trial court ruled that the City had the authority to enact the ordinance. Stallings appeals.

Stallings contends that the trial court misapplied Dillon's Rule of strict construction concerning the powers of local governing bodies. A proper application of Dillon's Rule, Stallings asserts, leads to the clear conclusion that the General Assembly has not authorized the City to enact Section 38-6. The Chief of Police counters with the contention that the General Assembly has granted broad police power to the City, and consequently, the City's power to enact Section 38-6 is implied in and incident to its police power.

■ We first recognized Dillon's Rule in *Winchester* v. *Redmond*, 93 Va. 711, 25 S.E. 1001 (1896), a decision in which we quoted with approval from 1 Dillon on Mun. Corp. (3d ed.), sec. 89 as follows:

[A] municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; Second, those necessarily or fairly implied in or incident to the powers expressly granted; Third, those essential

---

[1] The other plaintiffs/appellants are Russell E. Simpson, Louise F. Simpson, and Joseph R. White.

to the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.

*Id.* at 714, 25 S.E. at 1002. *Accord County Board* v. *Brown*, 229 Va. 341, 344, 329 S.E.2d 468, 470 (1985); *Tabler* v. *Fairfax County*, 221 Va. 200, 202, 269 S.E.2d 358, 359 (1980); *Commonwealth* v. *Arlington County Bd.*, 217 Va. 558, 573-74, 232 S.E.2d 30, 40 (1977); *City of Richmond* v. *County Board*, 199 Va. 679, 684, 101 S.E.2d 641, 644-45 (1958); *Donable* v. *Harrisonburg*, 104 Va. 533, 535, 52 S.E. 174, 175 (1905).

The General Assembly has vested the City with all the powers set forth in Code § 15.1-839.[2] Code § 15.1-839 provides as follows:

A municipal corporation shall have and may exercise all powers which it now has or which may hereafter be conferred upon or delegated to it under the Constitution and laws of the Commonwealth and all other powers pertinent to the conduct of the affairs and functions of the municipal government, the exercise of which is not expressly prohibited by the Constitution and the general laws of the Commonwealth, and which are necessary or desirable to secure and promote the general welfare of the inhabitants of the municipality and the safety, health, peace, good order, comfort, convenience, morals, trade, commerce and industry of the municipality and the inhabitants thereof, and the enumeration of specific powers shall not be construed or held to be exclusive or as a limitation upon any general grant of power, but shall be construed and held to be in addition to any general grant of power.

---

[2] Code § 15.1-838 provides that "[a] municipal corporation shall have and may exercise any or all powers set forth in this chapter when such powers are specifically conferred upon the municipal corporation." Section 2.01 of the City's charter provides in pertinent part: "The powers set forth in sections 15.1-837 through 15.1-907 of the Code of Virginia as in force on January 1, 1977, and as hereafter amended, are hereby conferred on and vested in the City of Virginia Beach." Thus, the General Assembly has specifically conferred upon the City the grant of police power contained in Code § 15.1-839.

The City's enactment of Section 38-6 was not "expressly prohibited by the Constitution and the general laws of the Commonwealth."[3] Code § 15.1-839. The crucial question, therefore, is whether the City's power to enact Section 38-6 is implied in and incident to the grant of police power set forth in Code § 15.1-839. We hold that it is.

In *Elsner Brothers* v. *Hawkins*, 113 Va. 47, 73 S.E. 479 (1912), we held that the City of Richmond had the authority to enact an ordinance making it unlawful for a licensed pawnbroker to receive, purchase, sell, loan, or hire any pistol, dirk, bowie knife, razor, sling shot, or any weapon of like kind. We said the City of Richmond's authority was derived from the "[v]ery broad and comprehensive police powers" that the General Assembly had delegated to that municipality. *Id.* at 49, 73 S.E. at 480. Under the City of Richmond's charter,

the council has power to enact suitable ordinances to secure and promote the general welfare of the inhabitants of the city, such as they may deem proper for the safety, health, peace, good order, and morals of the community. In addition, they have the power to make such ordinances and regulations as may be deemed desirable and suitable to prevent vice and immorality, to preserve public peace and good order, to prevent and quell riots, disturbances, and disorderly assemblages . . . .

*Id.* at 49-50, 73 S.E. at 480.

Similarly, in *King* v. *County of Arlington*, 195 Va. 1084, 81 S.E.2d 587 (1954), we held that the County of Arlington was authorized to enact an ordinance making it unlawful for any person to keep any dog known to be vicious or which evidenced a disposition to attack humans. We reasoned that the ordinance was authorized by the general grant of police power contained in former

---

[3] While this appeal was pending, the General Assembly enacted Code § 15.1-29.15, which provides that "[f]rom and after January 1, 1987, no county, city or town shall adopt any ordinance to govern the purchase, possession, transfer, ownership, carrying or transporting of firearms, ammunition, or components or combination thereof other than those expressly authorized by statute." Acts 1987, c. 629.

During its 1988 session, the General Assembly amended Code § 15.1-29.15 to add the following provisions: "Nothing in this section shall affect the validity or invalidity of any ordinance adopted prior to January 1, 1987. Nothing in this section shall have any effect on any pending litigation." Acts 1988, c. 392.

Code § 15-8(5). That section empowered the governing bodies of counties "[t]o adopt such measures as they may deem expedient to secure and promote the health, safety and general welfare of the inhabitants of their respective counties, not inconsistent with the general laws of this State." In *King*, we concluded that "[c]learly, . . . the prohibition against keeping a [vicious] dog . . . is within this grant of police power." 195 Va. at 1087, 81 S.E.2d at 590.

In the present case, the power conferred upon the City by Code § 15.1-839 is at least as broad as the general grant of police power relied upon in *Elsner Brothers* and *King*. Code § 15.1-839 grants to the City the authority to exercise all powers "pertinent to the conduct of the affairs and functions of [its] government, the exercise of which is not expressly prohibited by the Constitution and the general laws of the Commonwealth, and which are necessary or desirable to secure and promote the general welfare of the inhabitants of the [City] and the safety, health, peace, [and] good order . . . of the [City] and [its] inhabitants . . . ." Indeed, this grant of power is virtually identical to the grant of power that validated the ordinance in *King*.

We hold, therefore, that the City was authorized to enact Section 38-6 under the general grant of police powers contained in Code § 15.1-839. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*