COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judge Coleman and
          Senior Judge Duff
Argued at Alexandria, Virginia


KEVIN EUGENE HOLLAND
                                        OPINION BY
v.     Record No. 1320-97-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        JULY 21, 1998
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                    Thomas D. Horne, Judge

          Barry A. Zweig, Assistant Public Defender,
          for appellant.

          Leah A. Darron, Assistant Attorney General
          (Richard Cullen, Attorney General, on brief),
          for appellee.


     Appellant was convicted in a jury trial of trespassing in

violation of Code § 18.2-119.  On appeal, he contends the trial

court erred in failing to suppress a barment notice issued under

a policy authorizing police officers to act as agents for the

manager of a public housing complex.  For the following reasons,

we affirm.

                              I.

     In June 1995, the management of Loudoun House, a

federally-subsidized apartment complex, devised a strategy to

curb criminal activity and trespassing.  The property manager

executed a power of attorney appointing as her agents all members

of the Leesburg Police Department and granting them the power to

issue barment notices to unauthorized individuals present on the

Loudoun House property.  The power of attorney designated "each

and every sworn officer of the Leesburg Police Department as my true and lawful attorneys-in-fact." The attorneys were authorized to act for the property management agency as follows:

> (1) To serve trespass notices to any persons encountered on Loudoun House property who are not on a lease and cannot demonstrate a legitimate purpose for being on the premises. The trespass notice shall forbid the person served with it from returning to the property of Loudoun House.
> (2) To file criminal complaints for trespass on Loudoun House property if persons served with trespass notices return to the premises.
> (3) To testify on behalf of the management of Loudoun House in any criminal prosecutions arising out of the trespass notices and complaints described above that the officers are the "attorneys-in-fact" of the National Housing Property Management Company, and as such are authorized to issue barment notices.

On June 5, 1996, Captain Christopher Jones, using the power of attorney, issued appellant a barment notice signed by the Loudoun House management. The notice stated that the management had given the police permission to issue the barment, that appellant was being notified that he was not permitted to be present on the Loudoun House property "under any circumstances," and that if he returned to the property he was subject to arrest for trespassing. Appellant signed the notice indicating he understood what it meant.

On September 28, 1996, Officer Mike Buracker was conducting a plainclothes patrol of the Loudoun House apartment complex when he was advised that appellant was present on the premises in the

area of building twelve.  The officer went to that location and saw appellant leaving building twelve with an open beer in his hand.  Buracker knew appellant was listed on a police print-out of persons who had been barred from the property and arrested him for trespassing in violation of Code § 18.2-119.[1]

Appellant filed a motion to suppress the power of attorney and barment evidence.  The trial court denied the motion, convicted appellant of trespassing, and imposed a fine of $1,000.

On April 1, 1997, subsequent to appellant's trial, the Leesburg Town Council adopted a resolution supporting the issuance of barment notices using the limited power of attorney.  The resolution stated that "the issuance of barment notices by the town police in this manner has been a successful procedure in discouraging criminal and drug related activity."  The council ratified the procedure and authorized it "to be utilized by the town police to ensure the health, safety and welfare of all citizens of the Town."

## II.

Appellant contends the duties enumerated in the power of attorney exceeded the scope of legitimate police authority and thus the power of attorney had no effect.  He argues that as a

---

[1] "If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof . . . he shall be guilty of a Class 1 misdemeanor."  Code § 18.2-119.

result the Commonwealth failed to establish that Captain Jones had the authority to issue the barment notice and therefore failed to prove that appellant had effective notice that he was barred from the property as required by Code § 18.2-119.

The question of whether a police officer may act as an agent for a property owner, lessee, custodian or other person lawfully in charge of property for the purpose of issuing barment notices to people who "are unable to demonstrate a legitimate reason for being on the property" is an issue of first impression in Virginia. Additionally, the General Assembly has not addressed this question, and no Virginia statute expressly authorizes or prohibits this practice.

A review of the law of our sister states reveals that no other state has considered this precise question. However, several jurisdictions have approved similar or related practices to combat the problem of criminal and drug-related activities of non-residents in public housing. See Daniel v. City of Tampa, 38 F.3d 546 (11th Cir. 1994) (police enforcement of "trespass after warning" statute upheld against constitutional challenge by leafleteer); Daniel v. City of Tampa, 818 F. Supp. 1491, 1492 (M.D. Fla. 1993) (public housing complexes "have a serious problem with drugs and other crimes . . . caused by people who do not live in the public housing areas"); L.D.L. v. State, 569 So.2d 1310 (Fla. Dist. Ct. App. 1990) (acknowledging police authority to issue "no trespass" warnings to unauthorized

individuals on public housing complex property); <u>Williams v. Nagel</u>, 643 N.E.2d 816 (Ill. 1994), <u>cert.</u> <u>denied</u>, 514 U.S. 1064 (1995) (police issued "barred notices" and gave names of those barred to public housing management who determined whether to place them on the "no trespass" list of people to be arrested for trespassing if they returned to the property); <u>People v. Kojac</u>, Nos. 7242/97, 98-188 (N.Y. Sup. Ct. Mar. 18, 1998) (describing "trespass affidavit building" in which building management authorized police to arrest anyone who entered without a legitimate reason); <u>State v. Newell</u>, 639 N.E.2d 513 (Ohio Ct. App. 1994) (noting off-duty police officers acted as agents for public housing authority in issuing trespassing warnings); <u>City of Dayton v. Williams</u>, No. 13686, 1994 WL 37263 (Ohio Ct. App. Feb. 11, 1994) (describing public housing authority policy whereby police officers issue trespass notices to unauthorized individuals on the property and arrest those who previously received warnings).

In <u>Daniel v. City of Tampa</u>, 38 F.3d 546 (11th Cir. 1994), the Eleventh Circuit Court of Appeals tacitly approved a procedure that closely resembled the one at issue in the instant case. The public housing property in Tampa, under the control of the Housing Authority, was "often used by non-residents as a place to sell and use drugs." <u>Id.</u> at 548. As a result, the Housing Authority limited property access to "residents, invited guests of residents, and those conducting official business."

-5-

Id. "Enforcement of this limited access policy [was] accomplished through enforcement of Florida's trespass after warning statute." Id. Under "a special agency agreement," the Housing Authority authorized the Tampa Police Department "to issue warnings to persons trespassing upon Housing Authority property. Once an individual is issued a trespass warning, he is placed on a list and is subject to arrest if found on Housing Authority property again." Id.

After reviewing the procedure, the court found "the Tampa police have virtually no discretion when enforcing the statute on the Housing Authority property: any person who is not a lawful resident of the property, an invited guest, or present on official business, is subject to arrest after receiving a warning." Id. at 551. The court upheld the "trespass after warning" statute against vagueness and freedom of speech challenges, holding that "enforcement of Florida's trespass after warning statute on the property is a reasonable means of combatting drug and crime problems on the property." Id. Although the defendant in Daniel did not directly challenge the authority of the police to issue warnings on behalf of the property management, the court's acceptance of the policy as "reasonable" is noteworthy.

In Virginia, the Dillon Rule of strict construction dictates our determination of the powers of local governing bodies and of the city police as the law enforcement arm of the local

-6-

government.  This rule provides as follows:

> "[A] municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; Second, those necessarily or fairly implied in or incident to the powers expressly granted; Third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable."

Commonwealth v. Rivera, 18 Va. App. 103, 108, 442 S.E.2d 410, 413 (1994) (quoting City of Winchester v. Redmond, 93 Va. 711, 714, 25 S.E. 1001, 1002 (1896)).  "'The Dillon Rule is applicable to determine in the first instance, from express words or by implication, whether a power exists at all.  If the power cannot be found, the inquiry is at an end.'"  Lawless v. County of Chesterfield, 21 Va. App. 495, 499, 465 S.E.2d 153, 155 (1995) (quoting Commonwealth v. County Bd. of Arlington County, 217 Va. 558, 575, 232 S.E.2d 30, 41 (1977)).

Under Code § 15.1-839, a municipal corporation has general powers to promote the welfare of the people.[2]  Although the

---

[2] "A municipal corporation shall have and may exercise all powers which it now has or which may hereafter be conferred upon or delegated to it under the Constitution and laws of the Commonwealth and all other powers pertinent to the conduct of the affairs and functions of the municipal government, the exercise of which is not expressly prohibited by the Constitution and the general laws of the Commonwealth, and which are necessary or desirable to secure and promote the general welfare of the inhabitants of the municipality and the safety, health, peace, good order, comfort, convenience, morals, trade, commerce and industry of the municipality and the inhabitants thereof, and the enumeration of specific powers shall not be construed or held to be exclusive or as a limitation upon any general grant of power, but shall be construed and held to be in addition to any general grant of power."  Code § 15.1-839 (superseded by Code § 15.2-1102, effective December 1, 1997).

-7-

Leesburg Town Council ratified the barment process at issue, appellant's arrest and conviction pre-dated the town's resolution.[3]  At the time of appellant's arrest, police officers were acting at the request of the property manager for ongoing police assistance in prevention of crime in a public housing complex.  To facilitate this assistance, the Loudoun House management conferred on the police authority to bar unauthorized individuals from the property.  Therefore, we must address whether the police compliance with the property manager's request and their acceptance of this authority were within the scope of power granted to police or necessarily implied in Code § 15.1-138.

Code § 15.1-138, the statute in effect at the time of appellant's arrest,[4] expressly granted police officers the

---

[3]In light of our holding that the barment procedure was within the scope of powers granted to police and the fact that the resolution had not been adopted at the time of appellant's arrest, we need not examine whether the resolution ratifying the procedure was within the authority of the Town of Leesburg.

[4]Code § 15.1-138 was repealed and replaced by the following section:

> Powers and duties of police force [Effective December 1, 1997]. -- A. The police force of a locality is hereby invested with all the power and authority which formerly belonged to the office of constable at common law and is responsible for the prevention and detection of crime, the apprehension of criminals, the safeguard of life and property, the preservation of peace and the enforcement of state and local laws, regulations, and ordinances. . . .

Code § 15.2-1704.

following powers:

> The officers and privates constituting the police force of counties, cities and towns of the Commonwealth are hereby invested with all the power and authority which formerly belonged to the office of constable at common law in taking cognizance of, and in enforcing the criminal laws of the Commonwealth and the ordinances and regulations of the county, city or town, respectively, for which they are appointed or elected. Each policeman shall endeavor to prevent the commission within the county, city or town of offenses against the law of the Commonwealth and against the ordinances and regulations of the county, city or town; shall observe and enforce all such laws, ordinances and regulations; shall detect and arrest offenders against the same; shall preserve the good order of the county, city or town; and shall secure the inhabitants thereof from violence and the property therein from injury.

The plain language of the statute granted police officers the power to prevent and detect crime, to arrest criminals, and to protect life and property. Because Code § 15.1-138 did not explicitly address police authority to issue barment notices, under a Dillon Rule analysis, we must determine whether this power was "necessarily or fairly implied in or incident to" the powers expressly granted by the statute.

"We look to the purpose and objective of [Code § 15.1-138] in considering whether this authority necessarily is implied from the powers expressly granted by the statute." City of Chesapeake v. Gardner Enters., Inc., 253 Va. 243, 247, 482 S.E.2d 812, 815 (1997). "The statute must be given a rational interpretation consistent with its purposes, and not one which will

-9-

substantially defeat its objectives."  Id.  One of the objectives of Code § 15.1-138 is the detection and prevention of illegal activities, including drug-related crimes.  Police officers are also empowered to arrest criminals and are charged with the

responsibility of protecting life and property.  Necessarily implied in these duties is the power of the police to respond to requests for assistance from private citizens.

It is undisputed that the police had the power to accept the property manager's authority to bar a specified individual from the property.  This power furthered the objectives of the police to prevent crime, to protect life and property, and to preserve the peace, and it was necessarily implied in the powers expressly granted to police by Code § 15.1-138.

In the instant barment procedure, the request for assistance, as well as the police response, was ongoing.  Rather than respond to separate requests for service of a barment notice upon each unauthorized individual, the property manager's limited power of attorney empowered police to bar any unauthorized individual from the property.  This practice allowed police to identify and remove individuals who were on the property without legitimate purpose, thus preventing crime, protecting property, and preserving the peace.

For the foregoing reasons, we hold that the limited authority to grant barment notices was a necessary and expedient means of crime prevention and was "fairly implied in or incident to the powers expressly granted" to police by Code § 15.1-138. Consequently, the officers did not act outside their statutory

authority by issuing a notice barring appellant from Loudoun House, and the conviction is affirmed.[5]

<u>Affirmed.</u>

---

[5]Appellant also contends the issuance of a barment notice is a civil matter over which police authority is statutorily prohibited. <u>See</u> Code § 15.1-138 ("policemen shall have no power or authority in civil matters"). This contention misinterprets the statute. Although barment, a private action grounded in the law of property rights, is a civil matter, <u>see</u> <u>Black's Law Dictionary</u> 246 (6th ed. 1990) (defining civil laws as "concerned with . . . private rights and remedies"), Code § 15.1-138 does not prohibit private grants of authority over civil matters, and it is the validity of such a grant of power that is in question here.